UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANPOLIS DIVISION

| | |
|---|---|
| ANGELA L. HARRISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO:   1:19-cv-1282 |
| | ) |
| RELIANCE STANDARD | ) |
| LIFE INSURANCE COMPANY, | ) |
| INDIANA UNIVERSITY HEALTH, INC., | ) |
| and the INDIANA UNIVERSITY | ) |
| LONG TERM DISABILITY PLAN | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.  NATURE OF THE CASE**

1. This is an action brought by Plaintiff, Angela Harrison ("Harrison"), by counsel, against Defendant, Indiana University Health, Inc. ("IU Health") for its discriminatory actions against her based on her disability in violation of the American with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 et. seq. Harrison also brings this action against the Indiana University Health Long Term Disability Plan ("the Plan"), and Reliance Standard Life Insurance Company ("Reliance") (collectively, "Defendants"), for unlawfully violating her rights as protected by the Employee Retirement Income and Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001 et. seq.

## II. PARTIES

2. Harrison, at all times relevant to this litigation, resided within the geographical boundaries of the Southern District of Indiana.

3. IU Health is a corporation doing business in the Southern District of Indiana.

4. The Plan is sponsored by IU Health in the Southern District of Indiana.

5. Reliance is the "plan administrator" of the Plan as defined by 29 U.S.C. § 1002(16)(A).

6. The Plan vests discretionary authority to determine benefits eligibility in the Plan Administrator, who has delegated its discretion to Reliance.

## III. JURISDICTION AND VENUE

7. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; 42 U.S.C. § 12117; and 29 U.S.C. § 1132(e).

8. IU Health is an "employer" as defined by 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 1002(5).

9. Harrison is a qualified individual with a disability as that term is defined by the ADA, 42 U.S.C. § 12102(2)(c). At all relevant times, IU Health had knowledge of Harrison's disability and/or it regarded Harrison as being disabled and/or Harrison has a record of being disabled.

10. Harrison was an "employee" as that term is defined by XXX and 29 U.S.C. § 1002(6).

11. IU Health maintains and sponsors an "employee pension benefit plan" and "employee welfare plan" for its employees, including Harrison, as defined by 29 U.S.C. § 1002(1), (2) and (3).

12. Harrison was a "participant" in IU Health's "employee benefit plans" as defined by 29 U.S.C. § 1002(3) and (7).

13. Harrison has exhausted her administrative remedies per a letter from Reliance dated March 5, 2018.

14. Harrison exhausted her administrative remedies by timely filing a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission, claiming discrimination based on disability, and files this complaint within ninety (90) days of receipt of her Notice of Right to Sue.

15. All events, transactions, and occurrences concerning this case having arisen in the geographical environs of the Southern District of Indiana, venue is proper in this Court.

### IV. Factual Allegations

16. Harrison suffers from severe rheumatoid arthritis. Her impairment substantially limits her in a variety of major life activities and is a disability as defined by the Americans with Disabilities Act.

17. Harrison has worked for IU Health and its predecessors as a Social Worker since in or about November 1999.

18. In or about February 2016, Harrison first requested to work a flexible schedule to accommodate her disability once her allotment of FMLA was exhausted. The flexible schedule would have allowed Harrison to come in later on days when her disability was negatively affecting her in the morning.

19. IU Health denied Harrison's request for an accommodation.

20. IU Health informed Harrison that if she did not make it in by 9am, she would have to take the whole day off.

21. On or about August 8, 2016, Harrison again requested an accommodation. She requested and was approved to take up to 5 days off per month due to her disability. She did not request a flexible schedule at that time because such request had been previously denied.

22. On or about April 7, 2017, Harrison's impairment began to impact her ability to work more prominently.  Harrison again requested a flexible start time as it would allow her to better manage chronic fatigue, pain and stiffness that her disability caused each morning.

23. On or about April 12, 2017, IU Health denied her request and gave Harrison three options: (1) to continue under her current accommodation of 5 absences per month for her disability; (2) allow HR to look to re-assign her to another position; or (3) apply for disability benefits.

24. Because Harrison's accommodation request was denied and she knew that her disability would continue to cause more than 5 absences per month and therefore result in her termination, she relinquished her employment and sought disability benefits at IU Health's direction.

25. Harrison applied for and received short term disability benefits.

26. On or about August 22, 2017, Harrison applied for long term disability benefits.

27. Under the Long Term Disability Policy ("LTD Policy"), Harrison was a Class 2 individual, who had purchased the "buy-up" benefit amount. Pursuant to the LTD Policy, Harrison was entitled to 60% of her covered monthly earnings.

28. Harrison earned $29.29 per hour and was scheduled to work 40 hours per week. Her covered monthly earnings were $5,076.54 ($29.29 x 40 hours per week x 4.333) and her benefit amount was $3,045.92 ($5,076.54 x 60%).

29. Reliance sent a letter to Harrison on November 9, 2017, stating her covered monthly earnings were only $3,351.79 and her monthly benefit amount was $2,011.07. The letter sent to Harrison did not inform her of any right to appeal the determination of her monthly benefit amount.

30. Harrison recognized that the amount she would be receiving did not accurately represent her covered monthly earnings.

31. On or about November 19, 2017, Harrison sent an email to the LTD Policy representative requesting the source documentation utilized in determining her benefit amount and indicated her desire to appeal the determination.

32. On or about December 15, 2017, Reliance sent Harrison a letter denying Harrison's appeal. Reliance utilized only the actual hours that Harrison worked between January 27, 2017 and April 7, 2017 but did not include the hours that Harrison was scheduled but unable to work due to her disability.

33. On or about February 20, 2018, Harrison attempted to formally appeal Reliance's decision; however, by letter dated March 5, 2018, Reliance informed Harrison that her claim was not subject to appeal, and its previous determination was final.

34. Defendants basis for denying Harrison the full benefit of her policy discriminates against her based on her disability.

35. Harrison was an exempt employee scheduled to work 9am to 5:30pm, Monday thru Friday.  Harrison did not receive any additional hours for coming in earlier than 9am or staying later than 5:30pm – though she often did.

36. The reason Harrison was often unable to work her full forty scheduled hours was because she suffers from Rheumatoid Arthritis. She had an accommodation for her disability that allowed her to miss up to five days per month due to her disability.

37. Over the last twelve weeks of her employment, her condition deteriorated significantly causing her to utilize all of her allotted days for her accommodation and at times more.

38. When she used medical leave, IU Health required that Harrison take the full day as medical leave for her disability as opposed to shorter increments; those hours were then deducted from Ms. Harrison's paycheck.

39. If Harrison worked beyond her scheduled hours, those hours were not added to her paycheck, nor was she compensated for them.

40. Neither the Policy nor the Claims Department Administrative Procedures Manual ("the Manual") contain a provision that addresses how to calculate an individual's benefit when the hours the individual was scheduled to work are impacted by their disability.

41. The Manual uses "the average number of paid hours worked per week during the most recent twelve full calendar weeks ending just prior to your date of Total Disability."

42. By calculating Harrison's LTD benefit based upon the hours that she worked, rather than those for which she was scheduled, Defendants are taking advantage of the negative impact Harrison's disability had on her ability to work during her final twelve weeks of employment.

43. By denying Harrison's request to work a flexible schedule, Defendants negatively impacted Harrison's LTD benefit amount.

44. By requiring Harrison to take medical leave in full day increments only, Defendants discriminated against Harrison because of her disability.

45. Defendants are penalizing Harrison for trying to work through her debilitating pain for as long as possible before applying for disability benefits.

46. Leave that was caused by her disability and was granted as an accommodation under the ADA is now unlawfully being counted against her.

## V.  LEGAL ALLEGATIONS

### COUNT I-VIOLATION OF THE ADA - DISCRIMINATION

47. Paragraphs one (1) through forty-six (46) of Harrison's Complaint are hereby incorporated.

48. Defendant violated Harrison's rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. by terminating her because of her real or perceived disability.

49. Defendant's actions were intentional, willful and in reckless disregard of Harrison's rights as protected by the ADA.

50. Harrison has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### COUNT II – VIOLATION OF ERISA

51. Paragraphs one (1) through fifty (50) of Harrison's Complaint are hereby incorporated.

52. But for Defendants conduct, Harrison met all of the requirements for receipt of disability benefits, under the terms of the Plan, and the Plan arbitrarily and capriciously denied her the full benefit of the Policy

53. The Plan's denial violated Harrison's rights as protected by ERISA.

54. Harrison, therefore, seeks enforcement of her rights under the terms of the Plan pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).

## VI.  REQUESTED RELIEF

WHEREFORE, Plaintiff, Angela Harrison, by counsel, respectfully requests that this Court find for Plaintiff and order:

1. Defendants to pay Plaintiff any and all of the benefits to which Harrison would have been entitled under the terms of the employee welfare benefit plan but for Defendants' aforementioned unlawful acts;

2. IU Health to pay to Plaintiff compensatory damages for its violations of the ADA;

3. IU Health to pay to Plaintiff punitive damages for its violations of the ADA;

4. Defendants pay to Plaintiff pre- and post-judgment interest;

5. Defendants to pay Plaintiff's costs and attorney fees incurred in litigating this action; and,

6. Provide any further equitable relief this Court sees fit to grant.

Respectfully submitted,

*/s/Andrew Dutkanych III*
Andrew Dutkanych (#23551-49)
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

*Attorneys for Plaintiff, Angela Harrison*

## DEMAND FOR JURY TRIAL

The Plaintiff, Angela Harrison, by counsel, respectfully requests a jury trial as to her claims under the Americans with Disabilities Act and all other issues deemed triable.

Respectfully submitted,

*/s/Andrew Dutkanych III*
Andrew Dutkanych (#23551-49)
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

*Attorneys for Plaintiff, Angela Harrison*